## CHARLESTON.

### Thomas *v.* Hukill.

Submitted November 20, 1890.—Decided December 6, 1890.

Lease—Assignment—Detainer.

C., of Monongalia county, W. Va., executed to K. & L. an "oil lease of one hundred and thirty one acres, dated 11th August, 1885, for the term of twenty years; C. the lessor, retaining full

use and enjoyment of the premises for the purpose of tillage, except such as may be necessary for oil-development purposes, right of way *etc.*; K. & L. to commence operations within one year or thereafter pay five and a half dollars per month until the work is commenced; a failure to comply with either one or the other of these conditions to work an absolute forfeiture of the lease. Lessees assigned to defendant, Hukill, 29th September, 1885; and lease and assignment were recorded 29th June, 1886. Hukill had not commenced to bore for oil up to 7th March, 1888. By lease of that date, C., the owner in fee, still in actual possession, demised said one hundred and thirty one acres, excluding ten acres around the buildings, to R. for the sole and only purpose of drilling *etc.*, for oil and gas for the term of two years, or as long thereafter as gas or oil is found in paying quantities; R. not to disturb unnecessarily growing crops or fences. R. was to complete one well within six months, or pay forty dollars in advance for the right to drill during the two years by paying one hundred and thirty dollars in quarterly payments, and then the lease was to become null and void, unless a well was drilled in on the premises. This lease was assigned by R. to Thomas and others, plaintiffs, on the 10th of March, 1888, and on the 30th of March, 1888, lease and assignment were recorded. No one under this lease ever entered or attempted to enter or operate for oil. On the last of March, 1889, defendant, Hukill with C.'s, the lessor's, consent, entered, put down five producing wells at a cost of thirty thousand dollars, and was producing oil in paying quantities, when this action of unlawful entry and detainer was brought against him by plaintiffs for possession, on 14th January, 1890. The case was heard, verdict found, and judgment rendered 19th June, 1890, after the two years had expired. *Held:*

Plaintiffs were then not entitled to recover the possession of the premises from defendant, Hukill. The oil thus produced by Hukill in paying quantities did not then give plaintiffs the right to recover the possession of the premises from defendant, Hukill, in this action.

*Keck & Son, O. Johnson* and *W. P. Hubbard* for plaintiffs in error.

*O. Johnson* cited:

14 W. Va. 790; 13 Ohio St. 471; 11 W. Va. 94; 2 W. Va. 285; 6 W. Va. 508; 8 W. Va. 515; 18 W. Va. 299; Id. 579; 20 W. Va. 46; 26 W. Va. 455; Id. 345; 30 W. Va. 27; 21 W. Va. 277; 2 How. 406; R'y Co. *v.* Adams, 112 Ind.; 21 Neb. 605; 24 W. Va. 605; Id. 682; 22 W. Va. 407; 4 Min. Inst. P't I, 466; 4 Rand. 477; Olinger *v.* Shepherd, 12 Gratt.; 11 Gratt. 548; 23 Gratt. 363; 25 W.

Va. 408; 8 W. Va. 308, 318; 12 W. Va. 516; 18 W. Va.
243; 49 Am. Dec. 57; 39 Am. Dec. 98; 11 S. E. Rep. 754;
84 Am. Dec. 676; 91 Am. Dec. 589; 87 Am. Dec. 293;
Ad. Ejectm. 319; 18 Johns. 295, 302; 38 Ill. 98; 58 Ill.
169; 15 W. Va. 131; 23 Gratt. 335; Brown *v.* Vandegrift,
80 Pa. St.; *supra* p. 49; 96 Pa. St. 307; 21 Hun. 26; 84
Am. Dec. 82; Wood Land. & Ten. 674; 24 W. Va. 682;
28 W. Va. 218; 65 N. C. 315; 8 L. R. A. 448; 13 W. Va.
12; Tayl. Land. & Ten. 209 (t. p.); 17 Johns. 66; 1 How.
211; 15 Wall. 477; 40 Cal. 384; Boyd *v.* Talbot, 12 Ohio.
R.; 29 Conn. 331; 40 Mo. 449; 118 Mass. 118; Miller *v.*
Sparks, 4 Col.; People *v.* Dudley, 58 N. Y.; 3 Ind. 132; 21
Ind. 454; Bacon *v.* Furniture Co., 53 Ind.; 41 Cal. 432;
100 Mass. 353; 49 Ill. 211; 98 Pa. St. 555; 13 Ohio St. 471;
44 Ill. 326; 8 Humph. 614; 57 Vt. 286; 6 Ired. 65; 81 Va.
118; 3 McCra. 463; 4 H. & McH. 153; 64 Mich. 172; 3 Cal.
334; 41 Col. 432; 4 Col. 304; 49 Ill. 211; 100 Mass. 353;
20 N. H. 36; 4 N. H. 251; 8 N. H. 477; 34 N. H. 400; 12
B. Mon. 462; 3 C. & P. 613; 2 B. & C. 490; 1 Sm. Lead.
Cas. 109; 5 Serg. & R. 375; Co. Litt. 216, b., 218; 37 Pa.
525; 21 Hun. 26; 27 W. Va. 785; 5 Cas. 373; 105 Pa. St.
474; W. M. & C. Gas Co. *v.* DeWitt, 13 Pa. St.; 3 Cal. 334;
100 Mass. 353; 1 Lom. Dig. 338; 1 Min. Inst. 229; 2 Min.
Inst. 229; Thom. Co. Litt. 3, 4, 87, 88, 95, 97; Ad. Eject.
197; 6 N. Y. 74, 74, 80; Code, c. 71, s. 1; Tayl. Land. &
Ten. § 492; 7 Watts & S. 41; 38 Pa. St. 346, 353; 6 Duer
262; 1 M. & W. 402; 2 Russ. 170; 16 C. B. (N. S.) 421;
118 Mass. 446, 447; 103 Pa. St. 491; 6 B. & C. 85, 119;
37 Pa. 525, 529; 1 Denio 577; 12 Ired. 194; 20 Vroom 521;
22 Vroom 34; Tayl. Land. & Ten. § 297; 7 T. R. 117; 5
Co. 39; 5 Cush. 214; 11 Johns. 1; 9 Wend. 147; 3 Wend.
230; 3 Co. 64; 7 W. & S. 41; 2 N. H. 163; 2 Seld. 74; 15
M. & W. 718; 39 N. H. 491; 12 Ired. 194; 2 Gill 343; 28
Minn. 437; 5 Cush. 273–281; 53 Ind. 230; 63 Ind. 415; 40 Cal.
384; 41 Cal. 432; 1 Conn. 79; 27 W. Va. 663; 7 T. R.
422; 2 Washb. Real Prop. 451; 8 Pick. 284; 3 Ind. 343;
45 Me. 359; 1 Sm. Lead. Cas. 114; 38 N. Y. 165; 16 Gray
309; 102 Mass. 328; 46 Barb. 122; 21 Wall. 44; 2 Kern.
131, 132; 20 Ga. 563; 13 Cal. 107; 2 Seld. 506; 16 Pa. St.
140; 2 Dutch. 21; Id. 386; 31 Conn. 468; 24 W. Va. 682.

*W. P. Hubbard* of counsel for plaintiff in error, cited 1 Rob. Pr. (old) 349, 350.

*W. K. Shiras* and *C. C. Dickey, Alfred Caldwell* and *Berkshire & Sturgiss* for defendants in error.

*W. K. Shiras* and *C. C. Dickey* cited :

Co. Litt. 306 ; 2 Pet. 102 ; 1 Bibb. 380 ; 2 Bibb. 429 ; 2 Bar. Abr. 338; Roll Abr. 453 ; 54 E. C. L. R. 417 ; 9 East 23 ; 30 Pa. 528 ; 32 Pa. 367 ; 126 Pa. St. 582.

*Alfred Caldwell* cited :

8 W. Va. 318 ; 1 W. Va. 14; 28 N. Y. 516 ; 92 Ind. 590 ; 102 U. S. 64; 107 U. S. 437; 111 U. S. 584; 88 Pa. St. 198; 3 P. F. Smith 229; 130 Pa. St. 235 . 1 Mass, 219; 4 Mass. 135 ; 6 Mass. 24; 7 Mass. 381; 15 Pick. 23; 19 Pick. 445 ; 44 Vt. 230 ; 8 Bush. 256 ; 44 Mo. 332; 5 Lea 468 ; 109 Pa. St. 583 ; 56 Conn. 194 ; Code, c. 71, s. 4; Tayl. Land. & Ten. § 52; 38 Ohio St. 121 ; 45 N. Y. 571 ; 12 C. B. (74 E. C. S.) 659 ; 9 East 15 ; Anstr. 419 ; Bac. Abr. 833 ; 5 Rand. 571 ; 7 Wend. 210 ; 18 Pick. 527; 86 N. Y. 459 ; 32 Pa. St. 357; 30 Pa. St. 281 ; 95 Pa. St. 474 ; 58 Ill 211; 83 Ind. 196 ; 56 Conn. 198; 126 Pa. St. 582; 83 Pa. St. 144; 4 W. Va. 543 ; 14 W. Va. 523; 2 Seld. 203; 102 U. S. 64; 11 Pet. 102; 8 Cow. 297; 54 E. C. L. 417 ; Co. Litt. 206 a.; 2 Greenl. Cru. 34; 2 Min. Inst. 258; 1 Lom. Dig. 349; 2 Washb. Real Props. 15 (t. p.); Co. Litt. 206 b.; Bac. Abr. (7th Ed.) 161; 85 Pa. St. 412 ; also authorities cited by him in Guffy *v.* Hukill *supra*, pp. 51, 52.

*Berkshire & Sturgiss* cited, 9 East 23 ; 1 Bibb. 389 ; 3 B. Mon. 353.

HOLT, JUDGE :

This was an action of unlawful entry and detainer, brought in the Circuit Court of Monongalia county on the 14th January, 1890, by Thomas and others, plaintiffs below, against Hukill, defendant below and plaintiff in error, to recover possession of the William P. Core tract of land, of one hundred and thirty one acres, excluding therefrom ten acres around Core's buildings. After the evidence was in

on both sides, the plaintiffs below demurred to the evidence. Defendant was compelled to join therein. There was a conditional verdict, on which the court gave judgment for plaintiffs, and to which Hukill, defendant below, has obtained this writ of error.

It is agreed by the parties that William P. Core was the owner in fee-simple of the one hundred and thirty one acres mentioned in the summons; was, as such owner, in possession of the same on the 11th day of August, 1885, and is still the owner in fee-simple, subject to the leases and rights of plaintiffs and defendants respectively, being the oil lease to Kennedy & Long dated 11th August, 1885, under which defendant, Hukill, claims as their assignee, the oil lease to Ryall dated 7th March, 1888, under which plaintiffs claim as his assignee. Hukill is in possession at some unknown point, not shown, drawing the oil in large quantities from five wells bored by him. Plaintiffs, who were never in possession, are seeking to recover it from Hukill. During the progress of the trial, defendant excepted to eight several rulings of the court, and they appear in record in eight bills of exception, numbered from 1 to 8 respectively. I give here the summons and defendant's plea of "not guilty," because the overruling of defendant's motion to quash is here strenuously urged as error. The summons is as follows:

"State of West Virginia. To the sheriff of Monongalia county, greeting : We command you that you summons Edwin M. Hukill, if he be found in your bailiwick, to appear before the judge of the Circuit Court for the county of Monongalia, at the court-house thereof, on the 2d day of the next term, to answer Taliesin R. Thompson, Jacob B. Van Wagner, and Frederick C. Milliken, of a complaint that the said Edwin M. Hukill is in the possession of and unlawfully withholds from said Taliesin R. Thomas, Jacob B. Van Wagner, and Frederick C. Milliken, a certain tract of land situate in Cass district, Monongalia county, W. Va., containing one hundred and thirty one acres, more or less, excepting therefrom ten acres around the buildings on said tract, adjoining lands of C. C. Wade, M. L. Core, James Henderson, and others ; it being the same tract that was

leased to O. B. Ryall by William P. Core by deed of lease and sale dated the 7th day of March, 1888, and the same that the said Hukill is now in possession of and claims, and drilling and operating thereon for petroleum, and oil, and gas. And have then there this writ. Witness Richard E. Fast, clerk of our said court, at the court-house, this 14th day of January, 1890, and 27th year of the State. R. E. Fast, Clerk."

This motion to quash the summons was properly overruled, because the premises are described with convenient certainty; with such certainty as would enable the sheriff without inconvenience to deliver the possession to plaintiffs at their instance and at their risk. He would learn from the summons the district, the name of the owner in fee, the tract designated by the number of acres, some of the adjoining owners, the tract on which Hukill was then boring for oil. If there was controversy about one or more of the boundary lines, to set out all the metes and bounds in the summons would not relieve the court from investigating and determining their true location by the usual methods; nor would it enable the officer, by means of the summons alone, to locate them. This summons gives *prima facie* such marks of identity of the one hundred and thirty one acre tract as would enable the sheriff to find its general location; and all its boundary lines with a reasonable and practical degree of certainty, and with such convenience as is customary in such cases. The ten acres excluded are located around the buildings with definite boundaries, which we are for this purpose to suppose have been by lines designated and fixed. The imperfection of the summons, if any, is not of this character, and does not come into view at this stage of the proceedings. It would have been better for the plaintiffs to have set out, in a general way, the special and qualified possession to which alone they make any claim; for, though the greater includes the less, this is a peculiar possession which may be said to differ in kind. It is practical convenience we are after, and such a description of the possession claimed would have avoided the perplexity and confusion which sprung up later on and which the court attempted to dispel by its direction to the jury,

and the jury by their finding in the conditional verdict. But I do not now decide this point for I am reluctant to embarrass this simple remedy with anything tending to impair its simplicity.

Exception No. 2. I pass this by for the present, as involved in No. 8.

Exception No. 3. The court overruled the defendant's objection to the introduction by plaintiffs as evidence on their behalf of a transcript of the record of a suit brought in the State of Pennsylvania in the court of common pleas of Allegheny county by Thomas and others against Hukill. It was a suit in equity brought 3d July, 1888, involving the leases in question, was dismissed for want of jurisdiction; and such dismissal was affirmed by the Supreme Court of that State. 18 Atl. Rep. 875. In this case notice to defendant of plaintiff's claim and attempted diligence on plaintiff's part may have been relevant. It was properly admitted by the court below, which limited it to those objects.

Exception No. 4. This is involved in exception No. 8.

Exception No. 5. The court, on motion of plaintiffs refused to permit witness Core to answer certain questions asked by defendant. The lease from Core to Kennedy & Long, assigned by them to Hukill and duly acknowledged and recorded, was as follows: "Oil Lease. This lease, made this 11th day of August, A. D. 1885, by and between William P. Core, Cass township, of the county of Monongalia, and state of West Virginia, of the first part, and John Kennedy and J. W. Long, of Green county, in the state of Pennsylvania, of the second part, witnesseth: That the said party of the first part, in consideration of the stipulations, rents, and covenants hereinafter contained, on the part of the said parties of the second part, executors, administrators and assigns, to be paid, kept, and performed, hath granted, demised, and let unto the said party of the second part, their executors, administrators, and assigns, for the sole and only purpose of developing, drilling for, and producing of petroleum or carbon oil, and for the laying of pipes either under or on top of said surface, for transportation of the products of such development, all

that certain tract of land situate in Cass township, Monon-galia county, and state of West Virginia, and founded and described as follows, to wit: West by Ingram's heirs, north by Moses S. Core, east by Clark Wade, south by James Henderson, containing one hundred and thirty one acres more or· less, to have and to hold the said premises for the said purposes only unto the said parties of the second part, their executors, administrators, or assigns, for, during, and until the full term of twenty years next ensuing the day and year above written. Said parties of the second part hereby covenant, in consideration of the said grant and demise, to deliver to the said party of the first part, his heirs and assigns, the full equal one ninth (to be paid in cash of all the oil) part of petroleum or carbon oil dis-covered and produced on the premises herein leased, as produced in the crude state, the said first party to furnish tankage for the same until pipe-line is provided. The said party of the first part is to fully use and enjoy the said premises for the purpose of tillage, except such part as shall be necessary for said development purposes, and a right of way over and across the said premises to the place or places of operating. The said party of the first part covenants to grant to the said parties of the second part the right to remove any machinery or fixtures placed on said premises by said parties of the second part. The parties of the second part covenant to commence opera-tion for said purposes within one year from and after the execution of this lease, or to thereafter pay to the party of the first part $5.50 per month until the work is com-menced. A deposit in the hands of John Kennedy shall be good and sufficient payment for each and every month till work is commenced, and a failure on the part of said second parties to comply with either one or the other of the foregoing conditions shall work an absolute forfeiture of this lease. In witness whereof we, the said parties of the first and second part, have hereunto set our hands and seals the day and year above written. Wm. P. Core. [seal.] John Kennedy. [seal.]. J ·W. Long. [seal.]"

·The lease from Core to Ryall, assigned by him to plain-tiffs, and duly acknowledged and recorded, is as follows:

"Oil Lease. This lease, made this seventh (7th) day of March, A. D. 1888, by and between W. P. Core, of Cass district, of the county of Monongalia, and the State of West Virginia, of the first part, and O. B. Ryall, of the city of Pittsburgh, State of Pennsylvania, of the second part, witnesseth: That the said party of the first part, in consideration of the stipulations, rents, and covenants hereinafter contained on the part of the said party of the second part, his executors, administrators, and assigns to be paid, kept, and performed, have granted, demised, and let unto the said party of the second part, his executors, administrators, and assigns, for the sole and only purpose of drilling and operating for petroleum oil and gas, for the term of two years, or as long thereafter as oil or gas is found in paying quantities, all that certain tract of land situated in Cass district, and State of West Va., bounded and described as follows, to wit: On the east by lands of C. C. Wade, on the north by lands of M. L. Core, on the west by lands of M. L. Core and Ingram heirs, on the south by lands of James Henderson and W. P. Core, containing one hundred and thirty one acres, more or less; excepting and reserving therefrom .ten (10) acres around the buildings on said premises upon which there shall be no wells drilled, the boundaries of which shall be designated and fixed by the party of the first part. The said second party hereby agrees, in consideration of the said lease of the above-described premises, to give said first party one eighth ($\frac{1}{8}$) of all the oil or mineral produced and saved from said premises. And further agrees to give five hundred dollars per annum for the gas from each and every well drilled on the above-described premises in case the gas is conducted and used off the above-described premises. The said second party not to unnecessarily disturb growing crops thereon, or the fences. Said second party has the right which is hereby granted him, to enter upon the above-described premises at any time for the purpose of mining or excavating, and the right of way to and from the place of mining or excavating, and the exclusive right to lay pipelines for the purpose of conveying or conducting water, steam, gas, or oil over and across the said premises, and also

the right to remove at any time any or all machinery, oil-well supplies, or appurtenances of any kind belonging to said second party. It is further agreed between the parties to this agreement that this lease will be extended by first party six (6) months from the date of completion of well, as recited below, by second party paying forty ($40) dollars in advance ; and it is further agreed, at the end of one year from the date of this lease, the second party can have this lease extended one year longer by paying one hundred and thirty ($130) dollars in quarterly payments, and that this lease becomes null and void, unless a well is drilled in on the premises described. The party of the second part agrees to complete one well within six months from the date hereof, and, in case of failure to complete one well within such time, the party of the second part hereby agrees to pay thereafter to the party of the first part, for any future delay, the sum of (see No. 1, note) payable to self or Morgantown First National Bank of W. Va., and the party of the first part hereby agrees to accept such sum as. full consideration and payment for such delays until one well shall be completed, and a failure to complete one well, or to make any of such payments within such time and such place as above mentioned, renders this lease null and void, and to remain without effect between the two parties. It is understood by and between the parties to this agreement that all conditions between the parties hereto shall extend to their heirs, executors, and assigns. In witness whereof, we, the said parties of the first and second parts, have hereto set our hands and seals the day and year first above written. WM. P. CORE. [L. S.] O. B. RYALL. [L. S.]" This lease from Core to Ryall, dated 7th March, 1888, was duly acknowledged at date, assigned to plaintiffs by Ryall, 10th March, 1888, and admitted to record 30th March, 1888.

Plaintiffs then offered in evidence a paper, dated 16th February, 1889, from Core to them : "Whereas, on the 7th day of March, 1888, I executed an oil lease to O. B. Ryall on a certain tract of land in Cass district, Monongalia county, West Virginia, containing one hundred and thirty one acres, which lease was subsequently, to wit, on the 10th day of March, 1888, assigned and transferred to T. R.

Thomas, J. B. Van Wagner, & F. C. Milliken, all of which are recorded in the clerk's office of Monongalia county, West Virginia, in Deed Book No. 24, page 159; and whereas, a controversy has arisen between said assignees and one E. M. Hukill as to their rights in the premises, and I prefer not to receive the quarterly installment of $130 in said oil lease mentioned until said controversy is adjusted, as least at the present time: Now, this is to certify that I acknowledge the tender of payment of all said installments past due, and hereby waive the tender of all installments to become due, until said controversy is determined, or, until I shall make demand of payment, and give notice that this agreement is no longer to be obligatory. Witness my hand this 16th day of February, 1889. W. P. CORE. Attest: W. T. WILLEY."

Plaintiffs then proved by several witnesses that defendant Hukill, took possession with Core's consent about the last of March, or perhaps April, 1889; bored five wells at a cost of thirty thousand dollars; got oil in July, 1889, and at the time of this suit, and at the time of trial, was producing oil in largely paying quantities; that Ryall paid Core ninety dollars, six months' advance money, at the date of his lease; that neither Ryall nor plaintiffs had ever been in possession, attempted to take or asked for possession, at any time or in any way, but plaintiff Milliken in January, 1890, had asked Core to extend their lease; that they had not time to comply with the conditions; that Hukill had paid all rents and royalties down to date of the trial, the first payment being one hundred thirty seven dollars and fifty cents on 18th September, 1888; that Core did not prevent or object to plaintiff's entering and boring at any time before Hukill commenced.

Defendant introduced his lease and assignment duly acknowledged and recorded 29th June, 1886; proved his payment of all rents and royalties beginning 18th September, 1888; that he commenced to bore for oil the last of March, 1889; worked continuously and successfully developing and producing oil in large quantities; that plaintiff Milliken told defendant in Pittsburgh in September, 1888, that his, Ryall's, lease was "no good," but that he had one up there

that Hukill had no hold on; that Core remained on the land using it only for grazing and farming purposes; that he made no re-entry on the land for the purpose of boring for oil and gas; never demanded any rents from Kennedy & Long or Hukill on the premises or elsewhere, directly or through another, or that they should go on with the work or give up the lease. Defendant then asked witness Core the following questions, which the court refused to permit him to answer:

"(1) How did it come you executed the lease to O. B. Ryall?

(2) State whether or not that second lease was executed with intent on your part to forfeit the first lease executed by you to Kennedy & Long.

(3) State whether or not Ryall was notified of the existence of the lease to Kennedy & Long.

(4) How long was Ryall trying to get that lease from you?

(5) What promise, if any, did the said Ryall at that time make to you with regard to the matter if you would let him have that lease?

(6) State whether or not Ryall did or did not tell you at the time of the execution of the said second lease that if you would let him have the lease that he would take it subject to the Kennedy & Long lease, and if they, Kennedy & Long, objected, or their assignee, E. M. Hukill, objected, he, Ryall, would return his, Ryall's, lease to you, or words of that effect."

Mere matter of form is to be disregarded, and the most favorable answer taken as true, provided it be competent; then, if competent for any purpose, we are to assume that Core delivered the second lease to Ryall on condition that it was not to take effect if Hukill objected. In leases of this kind the law seems to be fairly well settled, that when a forfeiture for the benefit of the lessor is contracted for in case of default on the part of the lessee, before the lease can be regarded as at an end the lessor must, by word or deed in some unequivocal way manifest a purpose to treat the lease as forfeited. Otherwise the lessee would have it in his power to make default for his own benefit, and thus

escape the performance of one duty by wilfully failing to perform another. In *Wills* v. *Gas Co.*, (Pa.) 18 Atl. Rep. 721, 724, CLARK, J., in delivering the opinion of the court, says : "We have by slow approaches at last apparently turned into the general current of cases in which is found, without doubt, the great weight of authority both in England and in this country." See, also, *Gas Co.* v. *De Witt*, (Pa.) 18 Atl. Rep. 724. I do not understand *Guffey* v. *Hukill*, (*supra p.* 49) (11 S. E. Rep. 754) to lay down a different doctrine, and read by the light of its own facts it does not profess to treat of leases generally or to say that even in these cases the lessee in a proper case would be deprived of his remedy for relief from the forfeiture in a court of equity by the lessor executing a new lease to some third party. Therefore it becomes material to ascertain the purpose in that respect manifested by the lessor, when he executed the new lease.

The execution of the second lease can not be taken as conclusive evidence of a purpose to declare the first one forfeited, when its own terms show that such is not the purpose. But if silent on the subject, as this one is, can it not be shown that the lessor executed and delivered the new lease to the lessee himself on condition that it was to be given back, if the first lessee objected? This Court, in the case of *Stuart* v. *Livesay*, 4 W. Va. 45, and in *Newlin* v. *Beard*, 6 W. Va. 110, following the case of *Ward* v. *Churn*, 18 Gratt. 812, would seem to hold such conditions valid when made known to the obligee. The admissibility of this evidence is also rested upon the doctrine of the cases of *Lawrence* v. *Du Bois*, 16 W. Va. 443; *Davis* v. *Demming*, 12 W. Va. 246; *Vangilder* v. *Hoffman*, 22 W. Va. 1, and cases cited. "The efficacy of the parole evidence is not to establish an agreement to re-convey, the specific performance, of which the Courts will enforce, but to establish the true nature and effect of the instrument by showing the object with which it was made." *Sweet* v. *Parker*, 22 N. J. Eq. 457. In this case, it is not to add to or take from the language of the lease, or to impair its legal effect, but to rebut the inference of a collateral purpose to declare a forfeiture which otherwise would be drawn. But

I pass on from this point, as, in my view it has no important bearing.

Exceptions No. 6 and No. 7. That after the jury had rendered their conditional verdict, the court refused to set it aside, and also overruled the motion in arrest of judgment. Some questions raised might be discussed under these heads, but, as far as necessary they have been or will be discussed elsewhere.

Exception No. 8. This is the exception taken to the judgment given for plaintiffs on their demurrer to the evidence. There is no evidence to show that defendant, Hukill, holds any particular part of the surface of the one hundred and thirty one acres, or where he is boring for oil. If he holds the surface of the ten acres, the verdict and judgment are wrong; for plaintiffs have no right to recover such surface for any purpose, although Hukill may not be entitled to the oil. They neither claim it for any purpose in the summons, nor by their evidence do they show any right to the possession of such surface; and if Hukill is boring on it it can make no difference, so far as this remedy goes. And in no event have they the right to recover from him the whole surface of one hundred and thirty acres for any purpose, for they neither claim it nor prove it. When the verdict was rendered, their right to the possession must have been a then subsisting right; if their term or interest in a term had expired, they might have recovered costs but not the possession. Had their lease then expired? It began on the 7th day of March, 1888, and ran for the term of two years, expiring by its own limitation on the last moment of the 7th day of March, 1890, unless oil or gas was within that period found in paying quantities by the lessee or by some one working under that lease. Ryall and his assignees had from the 7th day of March, 1888, to 7th March, 1889, to begin their work without let or hindrance from anybody; and as late as the last of January, 1890, they did not ask for the privilege of boring, but for an extension of time, "because they had not time enough to comply with the conditions of their lease." They were refused by Core, because, as we may suppose, Hukill was then producing oil in large and paying quantities on some part of

the one hundred and thirty one acres. There is no covenant in this lease on the part of William B. Core, except the implied one of title and for possession and quiet enjoyment, that Ryall shall not during the term be disturbed in his special and qualified possession of the premises demised by Core or by any other person rightfully claiming under him. But it is said that plaintiffs were prevented from taking such possession by Core and by Hukill claiming under him. Let it be granted that it was wrongful, and greatly to their damage. Does that give them the right in this action in a common-law court to slide their term forward, and give it a new location in time? Shall not Core at least have an opportunity to be heard before this is done? He may have thought Hukill's lease had not been declared forfeited, or, if it had been so declared by implication, Hukill may have convinced him that a court of equity would relieve him from such forfeiture; and, what he could be compelled to do, he could do of his own accord. These plaintiffs had notice and knowledge of Hukill's claims from the beginning of their own. Their lease had expired by its own limitation, by the wrong of Core and Hukill let us say, but we are not called on in this case to say what damages, if any, a court of common-law ought to give them, nor whether a court of equity, with its powers of adaptation and its flexible mode of procedure, could treat these supposed wrongdoers as trustees, or carve out for plaintiffs, and set them afoot on a like term of like duration. Did the finding of oil by some one else (by Hukill under his elder lease) definitely or indefinitely prolong their two-years term as long as oil or gas should be found by him in paying quantites? All that could be said is that it may have increased their supposed damages, but it did not bring to life their dead lease. I surely need not take time and space to show that the lease from Core to Ryall, which demised the land for a term of two years to explore for oil, which he was to find at furtherest within two years or quit, contemplated its extension by the finding of oil by Hukill without his help and against his will.

We are of opinion that the court below should have given

judgment for defendant, Hukill, on the demurrer to evidence.

REVERSED.

<hr/>

# CHARLESTON.

