# CHARLESTON.

## THE EASTERN OIL CO. V. COULEHAN.

Submitted June 8, 1908.   Decided April 27, 1909.

1. EQUITY—*Inadequacy of Defense at Law.*

Although one have a defense at law, yet if it be doubtful, and he has also an equitable defense, and his defense at law would not be as complete, adequate and certain as in a court of equity he should not be required to relinquish his equitable right or defense and to depend solely on his defense at law.  (p. 536.)

2. SAME—*Right to Sue—Action Pending at Law.*

A defendant at law having a legal defense to an action, and a distinct ground for equitable relief against the plaintiffs claim may bring his suit in equity without waiting for the determination of the action at law, and may without being compelled to waive his legal defense by confessing judgment or otherwise, have a hearing in a court of equity on the merits of his case, and a decree for the proper relief.  (p. 536.)

3. MINES AND MINERALS—*Leases—Construction.*

Where in a lease for oil and gas there is a *habendum* "to have and to hold the same unto the lessee for the term of five years from this date, and as much longer as oil or gas is produced or rental paid thereon," and whereby in order to extend the term of such lease as provided, oil or gas is required to be produced within such five years limitation, the date of the lease should be excluded in the computation of time, unless it is plainly manifest therefrom that it should be included.  (p. 538.)

4. SAME—*Discovery of Oil or Gas—Effect.*

The discovery of oil or gas under a lease giving right of exploration and production, unless there is something in the lease manifesting a contrary intention, is sufficient to create vested estate in the lessee in the exclusive right to produce oil or gas provided for therein—a right, however, which may be lost by

abandonment, by failure to produce oil or gas, or pursue the work of production, or development of the property. (p. 539.)

5.   SAME—*Right to Produce—Abandonment or Forfeiture.*

Such right once vested by discovery of oil or gas in an upper sand will not be lost if the lessee continues to drill deeper in search of oil or gas in a lower sand, although he does not succeed in finding oil in the lower sand within the limitation prescribed by the lease. But if oil or gas be not found in the lower strata, production from the upper sand could not long be deferred without incurring the penalty of abandonment or forfeiture if forfeiture be prescribed. (p. 540.)

6.   CONTRACTS—*Substantial Performance.*

Where before the time has expired for the performance of a contract, there has been such a substantial compliance therewith by a party thereto, that gross injustice would be done him by denying him relief, equity will grant him relief as from a forfeiture. (p. 543.)

Appeal from Circuit Court, Doddridge County.

Bill by the Eastern Oil Company against John C. Coulehan and others. Decree for defendants and complainant appeals.

*Reversed and Remanded.*

W. S. STUART and VAN WINKLE & AMBLER, for appellant.

J. V. BLAIR and G. W. FARR, for appellees.

MILLER, PRESIDENT:

August 3, 1901, defendant and wife executed and delivered to West Union Gas Co., a lease, which on the same day it assigned to plaintiff, and whereby in consideration of two hundred and fifty dollars, and other valuable considerations, the said lessors granted and demised unto said lessee all the oil and gas in and under a tract of one hundred and eighteen acres in Doddridge county and also said tract of land for the purpose and exclusive right of operating thereon for oil and gas, together with other rights usually appertaining to such leases, and containing this *habendum:* "To have and to hold the same unto the lessee for the term of five years from this date, and as much longer as oil or gas is *produced, or the rental paid thereon.*" The lease also stipulates that the lessor shall be paid a royalty of one eighth part of all the oil produced and saved; and thereafter at the rate of two hundred dollars yearly for each gas well as long as gas therefrom is sold, payable within sixty days after commencing

to use gas therefrom, the lessor to have gas for his dwelling from any gas well free by making connections; and, in case no well shall be completed within three months from the date thereof the same to become absolutely void and of no further effect whatever on either party, unless the lessee shall pay for further continuances of the privileges therein mentioned the sum of fifty dollars quarterly, payable in advance until a well shall be completed; and that the lessee may at any time re-convey the premises "thereby granted" and thereupon be forever discharged from all liability to the lessors under any and every provision thereof accruing after such re-conveyance and the instrument be no longer binding on either party.   In Ohio a lease of this character, for a consideration, with granting clause, a *habendum,* a condition subsequent or defeasance clause, and a surrendering clause, is held to be a lease and not merely a license.   *Brown* v. *Fowler,* 65 Ohio St. 507, 521, citing *Woodland Oil Co.* v. *Crawford,* 55 Ohio St. 161, and *Martin* v. *Jones,* 62 Ohio St. 519, 525. In this State and in Pennsylvania, such leases are generally treated as mere licenses vesting no estate, the title thereto, both as to the period of years and the term thereafter remaining inchoate and contingent on the finding of oil and gas.   *Crawford* v. *Ritchey,* 43 W. Va. 252; *Steelsmith* v. *Gartlan,* 45 W. Va. 27; *Headley* v. *Hoopengarner,* 60 W. Va. 626.

The plaintiff, having paid the cash consideration entered, and regularly paid the quarter annual instalments of rent in advance for the full period of five years, but did not begin the work of drilling for oil or gas until June, 1906, after the last quarter had begun.   It owned other leases adjoining and in the same neighborhood, on some of which it had put down wells, the wells drilled, defining defendant's land as gas, but not oil, producing territory.   We take judicial notice that gas, unlike oil, can not be brought to the surface and stored to await a market for it, but must remain in nature's storehouse, and, unless allowed to waste away, taken out only as and when the producer may be able to find customers to take and consume it.

Plaintiff, having then invested in bonus money and rentals, twelve hundred dollars, in June, 1906, began a well on defendant's land, and, about July 20, struck gas in the salt sand at the depth of about 1240 feet, which when gauged, and tested showed a capacity of about 3,000,000 cubic feet per day.   After striking

this gas, however, he concluded to go deeper, to the lower or In-
dian sand. The well was begun in ample time to have completed
it in the lower sand, but shortage of water, due to the drouth,
caused a delay of several days. Finding the time growing short,
and defendant declining to extend the term except upon terms
deemed oppressive, orders were given the drillers to work on
Sunday. The defendant seeing the drillers at work suggested
that they were laying themselves liable to arrest and conviction
for working on Sunday, and they were frightened away and re-
fused to work. Thirty minutes, about, after midnight of August
2, 1906, defendant with witnesses, appeared at the well, where
the drillers were at work on the night tower, and inquiring of
and being informed by them that the well was not yet completed
in the lower sand, notified them that the lease had expired at
midnight, that the rights of lessee had ceased, and that all from
that time would be treated as trespassers. The drillers in the
absence of the owners stopped drilling, went home and went to
bed, and work was not resumed until noon of August 3rd, a loss
of about twelve hours in time. The drilling then begun was
continued until shortly before one o'clock of August 4th, when
gas in immense quantities was struck in the Indian sand, the
only interruption being the second appearance of the defendant
with witnesses shortly after the previous midnight to again no-
tify the drillers that the lease had then expired and ordering
them off the premises. The plaintiff having refused to vacate
the premises the defendant on August 4, 1906, instituted against
the plaintiff in the circuit court of Doddridge county a suit in
unlawful detainer to recover possession of the property.

On December 8, 1906 the plaintiff upon its original bill ob-
tained from said circuit court of Doddridge county an injunc-
tion protecting it in the possession and occupancy of said land,
and enjoining defendant from in any manner interfering with
any of its rights specified in said lease of August 3, 1901, and
from in any manner interfering with it in the use, occupancy and
operation of said land for oil and gas purposes under said lease,
and also, from prosecuting his said action of unlawful detainer
until plaintiff's rights under said lease should be settled and
determined in this suit, and until the further order of the court.
The further prayer of the bill was on the grounds alleged that
the court would decree plaintiff vested with the title to and inter-

est in all the oil and gas according to and subject to the terms of said lease, and that the said lease be held firm and valid.

At January rules, 1907, the plaintiff filed an amended bill amplifying the grounds of relief alleged in the original bill, renewing the prayer thereof, and upon hearing upon said original and amended bill and the separate answer of John C. Coulehan thereto and upon the depositions and proofs taken and filed in the cause, the decree of September 7, 1907, appealed from, was pronounced by the circuit court, whereby, the court being of opinion that the evidence did not sustain the material grounds for relief alleged, decreed that said injunction be wholly dissolved, the plaintiffs original and amended bills dismissed, but though expressing no opinion as to the production of gas in the salt sand, reserves to plaintiff the right to interpose the same as a defense to said action of unlawful detainer.

The grounds for relief alleged and especially relied upon by plaintiff are; (1) That having for the consideration paid and acknowledged, purchased the lease, promptly paid all the bonus and rental money for the full term of five years and within that period having actually discovered and produced gas in the salt sand, it thereby acquired a vested estate in and the right to produce oil and gas according to the provision of the lease; (2) That whether or not the first ground be good it could, and but for the alleged improper conduct and interference of defendant, it would have discovered and produced gas in the Indian sand before the five years expired.

The defendant relies upon the theories: (1) That even if oil and gas was discovered in the salt sand in July, it was not utilized, but abandoned, evidenced by drilling deeper, pulling the casing, whereby it was drowned out by the water and defendant thereby deprived of the use of the gas therefrom for domestic purposes according to the terms of the lease; (2) That by the provision of the lease the term of five years expired at midnight of August 2, and not as plaintiff claims at midnight of August 3, 1906, and that there was no such interference on his part with the completion of the well in the Indian sand within the five years, as claimed by him, as to entitle plaintiff at law or in equity to an extension of time, and that therefore the rights of plaintiff under the lease were wholly terminated at midnight of August 2, if not then certainly at midnight of

August 3, and; (3) That equity has no jurisdiction of the subject matter of plaintiff's bill.

By its decree the court below was manifestly of the opinion that the bill presented no grounds of equitable relief, and that whatever rights, if any, plaintiff acquired by its alleged discovery of gas within the five years was available at law as a defense to defendant's suit of unlawful detainer, wherefore its reservation in the said decree. If plaintiff's rights depended solely on discovery of gas in the first sand, there would be force in this view of the Court, although jurisdiction in equity to settle all questions as to the validity and priority of leases, for oil and gas and other minerals and mineral rights, where the parties claim under the same title, has been established by a long line of decisions of this Court, beginning perhaps with *Thomas* v. *Hukill,* 34 W. Va. 385, and including *Williamson* v. *Jones,* 39 W. Va. 231; *Bellman* v. *Harness,* 42 W. Va. 433; *Crawford* v. *Ritchey,* 43 W. Va. 252; *Steelsmith* v. *Gartlan,* 45 W. Va. 27; *Lowther Oil Co.* v. *Guffey,* 52 W. Va. 88; *Lowther Oil Co.* v. *Miller-Sibley Co.,* 53 W. Va. 501; *Pyle* v. *Henderson,* 55 W. Va. 122; *Starn* v. *Huffman,* 62 W. Va. 422, and other cases, and ending with *Sult* v. *Hochstetter Oil Co.,* 63 W. Va. 317, and *Pheasant* v. *Hanna,* 63 W. Va. 613. Jurisdiction in equity was maintained in many of these cases on the well recognized grounds of avoidance of multiplicity of suits, removal of cloud and quieting of title, accounting, avoidance of forfeiture and specific execution of contracts. And it has been held by this Court in *Kilcoyne* v. *Oil Co.,* 61 W. Va. 538; *Knotts* v. *McGregor,* 47 W. Va. 566, and *Headley* v. *Hoopengarner,* 60 W. Va. 626, that the covenant for peaceable and quiet possession implied in every lease for oil and gas is not limited to the right of exploration, but extends also to the right, after finding oil or gas, to produce the same, and that injunction is the proper remedy for enforcement of such covenant or to protect the exclusive right of the lessee under the contract. *Transportation Co.* v. *Pipe Line Co.,* 22 W. Va. 621; *Tufts* v. *Copen,* 37 W. Va. 623; *Brown* v. *Spilman,* 155 U. S. 673. In Pennsylvania we find it has been held that a preliminary injunction will be awarded against a lessor where he has made a re-entry under a claim of forfeiture and the claim is disputed on every ground on which he puts it. Thornton on Oil and Gas, 120, citing, *Poterie Gas Co.* v. *Poterie,* 153 Pa. St. 10;

*Duffield* v. *Rosenzweig,* 144 Pa. St. 520.  The doctrine of these ·cases on the subject of equitable jurisdiction has never, we believe, been questioned in this Court, except that in *Freer* v. *Davis,* 52 W. Va. 1, the first point of the syllabus of *Bettman* v. *Harness, supra,* so far as it relates to the jurisdiction to settle the title and boundary of lands as between adverse claimants, when the plaintiff has no equity against the party who claims ·adversely to him, was overruled.

But as we view this case the rights of the plaintiff are not wholly dependent on the discovery of gas in the salt sand.  The fact of such discovery within the meaning of the lease, is controverted.  The question whether the gas in that sand was not abandoned and the rights of the plaintiff, if any, lost thereby, .are raised here, and no doubt would be raised in the trial of the action at law, so that if the plaintiff has any other rights of an ·equitable nature to assert against the defendant of which a court of equity can take cognizance, or its defense at law would not be as complete, adequate and certain as in a court of equity it ·should not be required to relinquish its equitable rights.  Hoggs Equity Proc., § 3, and state and federal cases cited.  Eaton on Equity 31, and cases cited.  As the Court said in *Nease* v. *Insurance Co.,* 32 W. Va. 283:  "A doubtful or partial remedy at law does not exclude the injured party from relief in equity."  And in *Robinson* v. *Braiden,* 44 W. Va. 183:  "A defendant at law, having a legal defense to the action, and a distinct ground for equitable relief against the plaintiff's claim may bring his suit in equity without waiting for the determination of the action at law, and may, without being compelled to waive his legal defense by confessing judgment, have a hearing in the court of equity on the merits of his case, and a decree for the proper relief."  These cases were affirmed in *Gas Co.* v. *Window Glass Co.,* 63 W. Va. 266.  Equity retains its jurisdiction to relieve from a forfeiture notwithstanding it may be relieved at law.  Hoggs Equity Proc., § 587, p. 678, citing 2 Story Equity Jur. (4th Ed.), § 1301.  Indeed this is such a well recognized rule that it requires no citation of authority to sustain it.

One of the questions presented, but particularly applicable to the rights of the plaintiff involved in the discovery of gas in the second sand, but somewhat apropos also to the discovery of gas in the salt sand is, when did the five years term expire?  It

is urgently insisted for plaintiff that "five years from August 3, 1901, did not expire until the end of August 3, 1906," and it is with equal energy insisted for defendant that in construing a lease contract of this character which it is said must be regarded as having become effective on the day of its date, that day must not be excluded but included in reckoning time. We perceive that a rule which might be applicable to a mere deed of grant and conveyance, passing present title, and containing no words of condition, limitation or defeasance would not be applicable to a deed of lease of this character, making the subsequent rights of the lessee depend upon things to be done and covenants to be performed on his part thereunder. The plaintiff in addition to the rule at common law, relies upon section 288, Code 1906, providing that "The time within which an act is to be done shall be computed by excluding the first day and including the last; or, if the last be Sunday, it shall also be excluded; but this provision shall not be deemed to change any rule of law applicable to bills of exchange, or negotiable notes." It is suggested by counsel for defendants that this statute is only applicable where the act to be done is one required by some provision of the statute law, and has no application to things to be done under a contract. But the title of the chapter under which this section occurs is, "Of the promulgation, proof, commencement and construction of laws; effect of the common law and ancient statutes." This title seems to imply a broader meaning than that given it by defendant's counsel. In 28 Am. & Eng. Ency. of Law 211, the common law rule supported by the weight of authority is said to be that the date of the act or the happening of the event is to be excluded and the last day of the period included. The authorities both English and American are there collected in a note. And at page 215, this authority, referring to the distinction drawn in the early cases between the terms "day" and "day of date" holding that where the computation was from the former the day of the date was included, but when from the latter the day of the date was excluded, says: "It is obvious that this distinction is without merit and only calculated to mislead, and it is now recognized that there is no distinction between the two phrases, and the universal rule is that the day of the date is excluded and the last day of the period included; whether the computation be from the date or from the day of

the date." Citing in note the English and American cases on the subject. In *Atkins* v. *Sleeper*, 7 Allen 487, it was held that "a lease for a term of years from the 1st day of July begins on the 2nd day of July." In *Pugh* v. *Leeds*, 2 Cowper 714, where under a power to make a lease in possession but not in reversion a lease was granted for twenty one years to commence from the day of the date it was held that from the day, etc., was to be regarded as inclusive and not exclusive of the date. This construction was given to the instrument, however, for the purpose of upholding it under the power. But Lord Mansfield said: "The ground of the opinion and judgment which I now deliver is, that 'from' may in vulgar use, and even in the strict propriety of language, mean either inclusive or exclusive." And the rule seems to be that the first and last days will be included or excluded in the computation of time as it may be necessary to give effect to an instrument, save a right or prevent a forfeiture, if this can be done without violating a clear intention or a positive provision thereof. *Weeks* v. *Hull*, 19 Conn. 376, 378; *Sands* v. *Lyon*, 18 Conn. 18; *Bigelow* v. *Willson*, 1 Pick. 485; *State* v. *Gasconade County Ct.*, 33 Mo. 102; 28 Am. & Eng. Ency. of Law 215, and other cases cited in notes. Our conclusion based on our statute and these authorities is, that where a contract of lease of the character of that involved here requires of the lessee affirmative acts to be done within a certain period stipulated from the date thereof, unless there is something in the instrument itself evincing a different intention on the part of the parties thereto, the date of the instrument will be excluded in the computation of time.

But it is claimed that the receipts taken by plaintiff for the quarterly installments of rent show a different construction by the parties, which should prevail. We do not think so. The rule invoked is applicable only when the words of the instrument are ambiguous.

Now as to the two main questions. First, was gas discovered in the salt sand, and if so did the plaintiff thereby become vested with an estate in the right to produce oil and gas, which has not been lost by abandonment or otherwise? It is not controverted that gas in some quantity was struck in this sand; but an effort was made, and some evidence offered, tending to show that it was not of sufficient quantity for profitable production, and

it is claimed the plaintiff by going on down with same well to
deeper sand, and by subsequently pulling the casing and allowing
the water to come in and flood out the gas in the first sand must
be treated as having abandoned the gas in that sand and there-
fore as not having acquired any vested right to produce gas from
it or from the lower sand.   But the positive evidence of the
drillers and others, tested by the gauge, is that gas sufficient for
profitable production was obtained in this first sand, and plain-
tiff denies any intention to abandon it, claiming that in going
to the deeper rock its intention was to also test the land for oil
and gas in that sand.   Our cases seem to clearly hold that dis-
covery of oil or gas is alone sufficient to vest the right, a right
it is true which may be lost by abandonment, manifested by
neglect to produce, or pursue the work of production and further
development.   *Steelsmith* v. *Garllan,* 45 W. Va. 27; *Lowther
Oil Co.* v. *Guffey,* 52 W. Va. 88; *Lowther Oil Co.* v. *Miller-Sib-
ley Co.,* 53 W. Va. 505; *Oil Co.* v. *Gas Co.,* 51 W. Va. 583, 591.
See also Thornton on Oil and Gas, § 53, and § 70, and cases
cited.   In *Oil Co.* v. *Gas Co. supra,* at page 591, it is said: "Af-
ter the discovery of oil in paying quantities, it is held that title
does vest in the lessee, but there is no case which goes so far as
to announce that after mere discovery of oil, the lessee, upon
the assumption of a vested interest or title, may cease operation,
refuse to develop the property, tie up the oil by his lease, and
simply hold it for speculative purposes, or to await his own
pleasure as to the time of development."   But what of the fact
here?   After discovery of gas in the first sand the lessee went
right on down, with the same hole, it is true, succeeding thereby
in finding greater quantities of gas in the lower strata, and ren-
dering the defendant's land and its lease still more valuable.   We
have no case directly holding, that where oil or gas has not been
first produced from the rock in which they are first found, there
is no abandonment by going deeper for the product in some
lower strata, but we have a case where a well had ceased to pro-
duce oil in the first sand, saying: "No one can claim that under
such lease, if the lessee go on in further exploration his right is
lost.   He may go on in a reasonable time." *Ammons* v. *Tooth-
man,* 59 W. Va. 165, 169.   We would have to say on the weight
of the evidence that gas was found by plaintiff in the first sand,
in sufficient quantities to vest in it the right to produce oil or

gas from said land, and that there was no intention to abandon
that right by going deeper with the same well to the lower rock.
Having discovered gas in the first sand, and almost immediately
thereafter in larger quantities in the lower sand, what was to
preclude plaintiff from returning to the first sand and either from
the same well, or from a .new well drilled again tapping that
reservoir, discovered by it, and producing gas also from it?   Of
course, if gas had not been found in the lower rock, on the prin-
ciple announced in the case last cited, production of gas from
the first sand, after discovery, could not long be deferred, with-
out incurring the penalty of forfeiture or abandonment.

But suppose we are wrong in our conclusion on the first ques-
tion, what rights, if any, did the plaintiff acquire by the slightly
belated discovery of gas in the Indian sand?   It is conceded the
Indian sand was not penetrated and the gas gotten there until
about one o'clock of August 4, some twelve hours after the five
years had expired.   What is the proper construction of the lease
as to time?   It is for five years from date and as much longer
as oil or gas is produced or the rental paid thereon.   If oil or
gas was produced within the five years given for exploration the
full term thereof was as surely for as much longer as oil or gas
should be produced, as it was for the term of five years in which
to explore.   Failure to produce oil or gas within that time there-
fore, while not strictly or technically working a forfeiture of
any further right to explore or produce oil or gas, it resulted in
the same thing to plaintiff, and we perceive no reason why in a
proper case equitable principles applicable in cases of technical
forfeiture should not be applied.   The same necessity therefor,
in order to prevent a gross injustice, may arise in the one case
as in the other.   It is said, however, that in contracts of this
kind time is of the essence thereof, and this proposition, for
which authorities are cited by counsel, is not controverted; but
the case we have in hand is one where the plaintiff was legally
entitled to the full term of five years given for exploration, with-
out let or hindrances of the lessor; indeed the lessee by the im-
plied covenants of his deed was entitled to the protection of the
lessor therein.   The evidence satisfies us that though defend-
ant may not have been guilty of serious breach of the implied
covenants of his deed, yet that he was anxious the lessee should
fail to get to the Indian sand in time, did nothing to aid him,

and actually succeeded by his suggestions in preventing work on Sunday, and caused a loss of about twelve hours time after midnight of August 2, when he had no right of interference, but owed a positive duty to plaintiff to protect it in its rights. The drillers Kenney and Gaffney give it as their opinion that had they not been thus interrupted the well could have been drilled into the Indian sand and gas produced from it before the time expired.

Do these facts and circumstances give rise to no equitable rights against defendant? Shall he be permitted to take advantage of his own wrong in this way? And if he had not so interfered and the well could not have been drilled in within the time, are there no principles available to a court of equity upon which the plaintiff can be relieved from the gross injustice which the defendant seeks to inflict upon it? The plaintiff was acting in good faith, had invested large sums of money; the defendant lost nothing, but he got the benefit of the successful search, and wherein has he been wronged? Defendant's counsel cite us to Thornton on Oil and Gas, § 141, for the proposition that "although a well be commenced in time if it be not completed in time the lease will terminate." For this Thornton cites *Cleminger* v. *Baden,* 159 Pa. St. 16, a case in which though the well was commenced in time, there was no intention to complete it in time. It was not begun in good faith, and it was very properly held the beginning of the well did not prevent a forfeiture. The other cases cited are of the same character, and are not, we think, in conflict with the conclusion we have reached in this case. A lessor should not be heard to complain of a default caused by himself, or permitted to take advantage of his own wrong. *Delmar Oil Co.* v. *Bartlett;* 62 W. Va. 700; *Chenny* v. *Libby,* 134 U. S. 68; *Stahl* v. *Van Vleck,* 53 Ohio St. 136; *Hukill* v. *Guffey,* 37. W .Va. 426.

We perceive that upon the facts shown, the plaintiff is entitled to relief by injunction upon at least two well recognized grounds of equitable jurisdiction: First, upon the principle applicable in cases calling for relief from a forfeiture; second, upon the ground that where there has been a substantial compliance with the contract and gross injustice would be inflicted upon the plaintiff by denying him relief, relief should be granted. As we have said the case in hand does not strictly speaking, in-

volve forfeiture, but is one, we think, calling for the application of the same principles. The reasons therefor are the same in both cases. "The reason of the law is the life of the law." "Affirmative relief against penalties and forfeitures," as was said by this Court in *Craig* v. *Hukill, supra,* "was one of the springs or fountains of equity jurisdiction, and the jurisdiction was very early exercised; and it would be going in the very opposite direction and acting contrary to its very essential principles to affirmatively enforce a forfeiture." Citing Story, Pomeroy and Bishop on this subject. Unless the delinquency has been willful the court has discretionary power in relation thereto. *Railroad Co.* v. *Triadelphia,* 58 W. Va. 516, citing *Noyes* v. *Anderson,* 124 N. Y. 175, and other cases. In *Pheasant* v. *Hanna, supra,* jurisdiction in equity was upheld to relieve a mining lessee from a mere technical forfeiture.

Now on the subject of substantial performance of the contract. There can certainly be no question as to the fact that the plaintiff substantially performed its contract. It had discovered gas in one sand and was about to find it in a lower sand in still greater quantities, and we cannot say from the evidence that but for the improper interference by the defendant with its operation it would not have discovered the gas in the lower sand within the term of five years. Where there has been such substantial performance of a contract, equity may set aside or disregard a forfeiture occasioned by a failure to comply with the very letter of an agreement. 1 Pomeroy, section 451, page 756, citing *Hager* v. *Buck,* 44 Vt. 285 (8 Am. Rep. 368), and *Bliley* v. *Wheeler,* 5 Colo. App. 287. And this Court in *Railroad Co.* v. *Triadelphia, supra,* page 517, recognizes the doctrine announced in *Henry* v. *Tupper,* 29 Vt. 358, opinion by Chief Justice Redfield, that relief may be granted in equity even where the condition is for the performance of collateral acts.

For the reasons given we think the plaintiff has made out a case entitling it to relief in equity and the decree which the circuit court should have entered will be entered here, making perpetual the injunction awarded upon the original, and prayed for therein and in the amended bill, and that the plaintiff have its costs in this Court and in the circuit court in this behalf expended.

*Reversed and Remanded.*