BLILEY v. WHEELER ET AL.

1. PLEADING—BURDEN OF PROOF—FORFEITURE.
Abandonment and forfeiture, as pleaded by the defendants in this case, must have been established by them affirmatively.

2. EQUITY.
A party claiming equity must do equity.

*Appeal from the District Court of Pitkin County.*

THE suit was brought by appellant for an accounting and for a share of profits arising from a working and sale of a mine.   It is alleged in the complaint that about the 9th day of November, 1887, one E. S. Gould and appellee Wheeler entered into the following contract:

"This agreement, made this 9th day of November, A. D. 1887, by and between B. Clark Wheeler of the first part, and E. S. Gould of the second part, both of Pitkin county, state of Colorado.

"Witnesseth, that whereas, the first party hereto is now in possession of the Alpine and Bushwhacker lode mining claims, situated in Roaring Fork mining district, in said county of Pitkin, by virtue of a bond and lease of said property from W. E. Stone et al., the owners of said property, to the first part, the said first part hereto does hereby covenant to and with the second part hereto to convey to the second part one one-hundredth (1-100) interest in and to the said lease and bond, upon the conditions and consideration fol-

lowing, viz.: Second part hereto hereby agrees in consideration of said covenant of the first part hereto to put in cash or work, or both, as shall be agreed upon, at the rate of fifty cents per day, as the same may be demanded by the first part, for each and every one-hundredth interest hereby contracted for, until the shaft now sinking upon the Bushwhacker claim shall reach the contact between the short lime and the black shale—say a depth of 600 feet more or less.

"Said payment of fifty cents per day when demanded and paid to be full consideration for each one-hundredth of said interest running from the first day of August, 1887, when said work commenced, provided that said payments shall continue until said contact and depth shall be reached, except during unavoidable delays by accident or by injunctions by the court, in which case such delay is not to be counted.

"The amount hereby contracted for is one-hundredth of said interest in said lease and bond, and the daily payment of, to be fifty cents.

"In case the second part hereto shall cease or refuse to furnish pay on this contract according to its terms, then he shall forfeit his interest in the said bond and lease, but he shall be entitled, and the first part hereto contracts to repay the second part the amount of money or labor, or both, actually contributed and paid in by the second part upon this contract, provided, however, that the shaft of the said Bushwhacker claim shall be sunk to pay mineral.

"In such case, but not otherwise, second part shall be entitled to receive his pay from the net receipts from mineral mined on said claim.

"And this agreement for payment by first part is hereby confined and limited to this particular mode of payment.

"In witness whereof, the said parties have hereunto subscribed their hands and seals.

"B. CLARK WHEELER, (L. S.)<br>"E. S. GOULD, (L. S.)"

That about the 15th of May, 1889, E. S. Gould assigned

his contract to appellant Bliley, in writing. That the plaintiff and Gould, his assignor, had at all times performed the conditions of the contract. That in June, 1889, Wheeler had sunk the shaft on the mine to the short lime and shale, and from that time mined and took out large quantities of valuable ore and received large profits. That at some date, not given, in the year 1889, Wheeler sold and conveyed his lease and interest, or the greatest part of it, to " The Continental Divide Mining Investment Company," and that Wheeler and the company thereafter realized large profits from the mining of the property. That Wheeler was at all times after its formation the president of the Continental Company, and that the company took the interest with full knowledge of the plaintiff's interest and rights. That about the 23rd of December, 1889, Wheeler and the Continental Company surrendered the lease of the property before that time held, and took a new lease of the same property, and that action was taken for the purpose and with the intention of depriving the plaintiff of his rights and interest in the lease. That after obtaining the new lease, Wheeler conveyed his entire interest in the lease and bond of the mines to the Continental Company, Wheeler being and remaining president. That some time in the year 1890 the Continental Company acquired title to the mining property, and on the 27th day of December, 1890, sold and conveyed the mining property for the sum of $50,000, to " The Bushwhacker Mining Company," of which Wheeler was also president. That by the sale of the property Wheeler and the Continental Company made large profits in addition to the profits made from mining, the whole aggregating not less than $250,000, and refuse to recognize the plaintiff or to pay him one one-hundredth part of the profits, or perform the covenants of the contract. A prayer for discovery and accounting, and that the defendants be decreed to pay to him one one-hundredth share of all profits realized, etc.

The defendants answered, admitting most of the allegations of the complaint, basing their defense upon the follow-

ing: "Deny that plaintiff at the time of the conveyance (to the Continental Company) had any right, title or interest in or to said lease and bond, or either of them."

"They admit that they fail and refuse to pay plaintiff any sum or to perform the conditions of the agreement set out in the said amended complaint, and they say that they so fail and refuse because plaintiff has failed and refused to keep or perform the terms and conditions of said agreement upon his part, and because he abandoned and forfeited the same long before any mineral was extracted or sold from either of the mining claims named in said complaint, and for the further reason that said leases and bonds were forfeited, and a forfeiture thereof declared by the persons granting the same, and these defendants state that no profits were ever derived by, from or through said lease and bond, or either of them, and that said leases and bonds from W. E. Stone and others were forfeited long before the extension of the lease and bond mentioned in the sixth paragraph of said amended complaint."

The case proceeded before the court without a jury. Gould, the original party to the contract relied upon, testified to full performance on his part as long as he retained the contract; that he made the payments to Wheeler whenever due or demanded; that he sold and transferred his interest to the plaintiff; that such transfer was at first verbal. He could not recollect the exact time it remained so, but from six to nine months before the written assignment.

The plaintiff (Bliley) testified to the purchase of Gould's interest and succeeding him under the contract; that the transaction was not reduced to writing until the 15th of May, 1889, nearly a year after the purchase (which would appear nearly correct, as a receipt from Wheeler to the plaintiff, introduced in evidence, with many others for monthly payments, bore date June 11, 1888).

It also appears from the evidence that sometime prior to June, 1889, the plaintiff acquired and held a further or second interest of one one-hundredth in the bond and lease of

the property, upon which he paid some amount monthly; also that plaintiff was in some way connected with Wheeler in the mining of some other property, spoken of in receipts as the "Iowa Lease," upon which plaintiff paid assessments in money; also that Wheeler had other dealings with plaintiff whereby he (Wheeler) owed plaintiff a balance frequently at the time of settlement, which was deducted from the amount of assessment due.

The numerous receipts given by Wheeler were usually for the two one one-hundredth shares, and some of them embraced the Iowa lease.

Matters appear to have moved along without trouble or friction until June, 1889, when a settlement was had between appellant and Wheeler for the May expenses. There was a balance due appellant from Wheeler of $17.00, and Wheeler's assessments on the different shares held by appellant was $35.00. Appellant testified to what occurred as follows:

" Q. Did this $17.00 which you say was due from Wheeler to you amount in all to your part on the May expenses, that is, was the $17.00 enough to pay your assessment for May ? A. No, sir.

" Q. What was said about the balance ? A. Along about the middle of June Mr. Wheeler came to me and asked me for an order on Mr. Pierson for the balance of my assessment, which I think he stated was about $35.00.

" Q. The whole thing? A. The whole thing, yes; I gave him my reason for not wanting to give an order on Mr. Pierson and told him I would pay him the balance just as soon as I could get it; he turned around and started away and says ' I will make you forfeit your interest.'

" Q. Now, Mr. Bliley, particularly with reference to the amount, what was said about this balance that Wheeler asked you for, whether for the whole $35.00 ? A. No, sir; he asked me for an order for about $17.00.

" Q. How did he arrive at the sum of $17.00 ? A. I suppose because he thought that balance due.

" Q. Over and above what he owed you? A. Over and above what he owed me.

" Q. The difference between that and the amount due you, or as your proportion of the May expenses? A. Yes, sir.

" Q. And he asked you in that way for an order on Pierson for that amount? A. Yes, sir.

" Q. You gave him your reason for not wanting to give an order on Pierson, and told him that you would pay him that just as soon as you could? A. I did.

" Q. Did he ever ask you for it again? A. He never did.

" Q. Did he ever after that ask you for any money on account of your expenses on this lease? A. He never did.

" Q. Did any one representing him or representing the management of the Bushwhacker lease ever at any time ask you for the payment of your proportion of the expenses? A. They never did.

" Q. Did any one ever offer to pay back to you, Mr. Wheeler or any person representing The Continental Divide Mining Investment Company or the lessee, the sums of money that you had advanced as your part of the expenses? A. No, sir."

J. T. Prather and Isaac Jones testified that the contact between short lime and black shale was struck in the latter part of July, 1889, and paying ore and mineral reached, which was mined from that time.

There was some documentary evidence, copies of leases, etc., put in, not important for the decision of the case, and the plaintiff rested.

A motion was made by counsel for defendants for a nonsuit, which was sustained by the court, upon the ground that the plaintiff had failed to show performance by himself of the contract. Judgment of nonsuit was entered and the suit dismissed. From the judgment an appeal was prosecuted to this court.

Messrs. DOWNING, STIMSON & MCNAIR, for appellant.

No appearance for appellee.

REED, J., delivered the opinion of the court.

We think the court erred in sustaining the motion for non-suit and dismissing the suit. Defendants admit the contract and all the material allegations of the complaint, and affirmatively allege as a defense, and the only one, that plaintiff "has failed and refused to keep or perform the terms and conditions of said agreement upon his part, *and because he abandoned and forfeited the same long before* any mineral was extracted or sold from either of the mining claims," etc.

I fail to understand how this allegation presents any defense or denies the right to recover under the contract. The covenant in the contract is to contribute fifty cents daily "until the shaft now sinking * * * shall reach the contact between the short lime and the black shale, say a depth of 600 feet more or less." The contract was in no way dependent upon the striking, extracting or sale of mineral, nor had plaintiff agreed to continue contributing until such result was reached. There could have been complete performance if no paying ore body had ever been found. There was no allegation of abandonment or forfeiture within the terms of the contract.

The court held that in order to entitle plaintiff to recover, he must have shown that there had been no abandonment or forfeiture. The abandonment and forfeiture, as pleaded in this case, must, according to all rules of practice, have been established by the defendants affirmatively, otherwise the rights of the plaintiff stood confessed. To require the plaintiff to prove a negative, and show that he had not forfeited or abandoned, or be subject to a nonsuit, was error, for which, if for no other reason, the judgment must be reversed.

The action was brought upon the contract, which only involved one one-hundredth interest in the property.

From the 9th of November, 1887, until June, 1889, for eighteen or nineteen months, the work of sinking had been prosecuted and the payments made by the plaintiff and his

assignor, Gould. During nearly all that time mutual dealings were had between plaintiff and Wheeler, the manager. The receipts put in evidence showed, in many instances, plaintiff had anticipated his payments and made them in advance, and at the last monthly settlement, made in June, 1889, for the month preceding, it was found that, by reason of advances made, Wheeler was indebted to the plaintiff in the sum of $17.00. The assessment for the month of May could not, under the contract, have exceeded $15.50, which was exceeded by the amount due the plaintiff from Wheeler. The evidence did not show that plaintiff had authorized the application of that balance, or any part of it, to the payment of any other claim, or as an assessment upon any other interest. The contract only embraced an interest of one one-hundredth, and that contract was sought to be enforced. The court could not, upon such hearing, settle any other equities or accounts existing between the parties, and apply a portion of the money in the hands of Wheeler to some other indebtedness, so as to establish a default and forfeiture for the paltry sum of $7.00, as claimed by Wheeler, after having collected and used near $300.00 from plaintiff and Gould in prosecuting the enterprise. The suit was in equity, and courts, in such cases, do not look complacently, under such circumstances, upon what might be a technical forfeiture at law, but clearly inequitable in a case of this kind.

If this is not the correct view, the court erred in dismissing the suit without decreeing to the plaintiff repayment of all the money put in by Gould and plaintiff. The very clause of the contract relied upon to sustain the forfeiture also provides that when the shaft was sunk to pay material, that the party should be repaid all money contributed. It was shown by the plaintiff's evidence that paying material was reached a little more than a month after the pretended or supposed forfeiture, and long before the bringing of this suit. No rule is better settled than that a party claiming equity must do equity. It follows that the decree must be reversed and the cause remanded.

*Reversed.*